IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DR. RACHEL TUDOR, | ) |
| Plaintiff, | ) **COMPLAINT AND JURY DEMAND** |
| v. | ) Case No. CIV-20-1054-JD |
| 1. SOUTHEASTERN OKLAHOMA STATE UNIVERSITY | ) |
| and | ) |
| 2. THE REGIONAL UNIVERSITY SYSTEM OF OKLAHOMA, | ) |
| Defendants. | ) |

**PRELIMINARY STATEMENT**

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").

2. Plaintiff Dr. Rachel Tudor, was employed by Defendant Southeastern Oklahoma State University ("Southeastern") as a full-time tenure track academic from 2004 to 2011.

3. Despite Dr. Tudor's strong record of achievements in teaching, scholarship, and service, Southeastern denied her tenure and the opportunity to apply for tenure, because of her sex and in retaliation for her complaints of sex discrimination. Southeastern

terminated her on May 31, 2011.  Dr. Tudor has been seeking employment in her academic field since that time.

4.	The United States brought an action in this Court on March 30, 2015 captioned *United States of America v. Southeastern Oklahoma State University and the Regional University System of Oklahoma*, No. 15-cv-324-C, alleging, *inter alia,* sex discrimination and retaliation against Defendants.  Dr. Tudor intervened in the action on May 5, 2015.  The jury returned a verdict in her favor on two counts of sex discrimination and one count of retaliation on November 20, 2017 (ECF 262, attached here as Exhibit "1"). Since that time, the matter has been on appeal and is scheduled for oral argument on November 16, 2020.  This matter is referred to herein as the "Prior Action."

5.	On March 17, 2020, as part of Dr. Tudor's ongoing job search, she applied for a publicly available, open position as an Instructor in the English Department at Southeastern.

6.	This application was submitted nearly nine years after Dr. Tudor was terminated from her position at Southeastern.  Dr. Tudor has good relations with members of the Southeastern community, including many faculty.  In fact, three emeriti faculty members wrote recommendations supporting her application for the Instructor position.

7.	Despite the jury verdict against it for its prior discriminatory and retaliatory behavior towards Dr. Tudor, Southeastern continues to engage in a disturbing pattern and practice of discriminating against Dr. Tudor to keep her out of the university after she sought to enforce her civil rights.

8. Counsel for Southeastern and the Regional University System of Oklahoma ("RUSO") , Dixie Coffey, Jeb Joseph, and Zach West of the Office of the Oklahoma Attorney General, stated in writing on April 17, 2020 that, because of Dr. Tudor's Title VII litigation against Southeastern, they had determined that she will not be considered for any employment opportunities at Southeastern. This letter is attached as Exhibit "2".

9. Southeastern and RUSO's stated basis for rejecting Dr. Tudor's application expressly discriminates against her because she opposed Defendants' earlier Title VII discrimination against her and participated in the Prior Action Title VII proceedings challenging her treatment. Defendants' action constitutes illegal retaliation under Title VII.

## PARTIES

10. Plaintiff Dr. Rachel Tudor is an academic who worked for Southeastern in Durant, Oklahoma, as a tenure track Assistant Professor from 2004 to 2011. She currently resides in Plano, Texas.

11. Defendant Southeastern is a member of the Oklahoma state system of higher education and part of Defendant RUSO. RUSO's Board of Regents is the governing board for several Oklahoma state universities, including Southeastern. RUSO's Policy Manual explains how the operations of RUSO and Southeastern interrelate. RUSO has the power to fix compensation and duties of personnel at its regional universities, including Southeastern. RUSO has the power and duty to adopt rules and regulations to govern its regional universities, including Southeastern.

Southeastern's President must report to RUSO on all matters related to employment, discipline, and termination of faculty. For these reasons, Southeastern and RUSO are a single employer for all relevant purposes.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §1331.

13. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3). Both Southeastern and RUSO are agencies of the State of Oklahoma. At all relevant times, RUSO's principal place of business has been in Oklahoma City, Oklahoma, and Southeastern's principal place of business has been in Durant, Oklahoma.

14. Southeastern and RUSO are "persons" within the meaning of 42 U.S.C. § 2000e(a) and "employers" within the meaning of 42 U.S.C. § 2000e(b).

## FACTS

15. On or about September 9, 2010, Dr. Tudor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging violations of Title VII by Defendants.

16. Dr. Tudor received a Notice of Right to Sue from the United States Department of Justice ("DOJ"). DOJ filed the Prior Action against the Defendants in the United States District Court for the Western District of Oklahoma within 90 days of receipt of the notice, and Dr. Tudor was granted intervention in the Prior Action.

17. The Prior Action was tried to a jury, which returned a verdict in Dr. Tudor's favor on one count of sex discrimination for denial of tenure in 2009-2010, one count of sex discrimination for denial of the opportunity to apply for tenure in 2010-2011, and one count of retaliation for denial of the opportunity to apply for tenure in 2010-2011. The jury denied her count alleging a hostile work environment.

18. Defendants appealed the verdict, and Dr. Tudor also appealed certain trial court rulings. The cross-appeals are currently pending before the U.S. Court of Appeals for the Tenth Circuit.

19. On or about July 22, 2020, after applying for a different position at Southeastern and being informed that her application was rejected and she was banned from re-applying, Dr. Tudor filed a new charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging that Defendants retaliated against her in violation of Title VII by refusing to consider her application because of the Prior Action.

20. Upon information and belief, the EEOC provided Defendants with notice of the charges of discrimination.

21. On or about July 30, 2020, Dr. Tudor received a Notice of Right to Sue from the U. S. Department of Justice, notifying her of her right to bring suit, and she has filed within 90 days of receipt of the notice.

22. Dr. Tudor took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

*Retaliation Post-Lawsuit*

23. On March 17, 2020, as part of Dr. Tudor's ongoing job search, she applied for a publicly available, open position as an Instructor in the English Department at Southeastern.

24. This application was submitted nearly nine years after Dr. Tudor was terminated from her position at Southeastern.

25. All members of the administration who discriminated or retaliated against Dr. Tudor are no longer employees of Southeastern.

26. The position of Instructor at Southeastern is a substantially different position from Dr. Tudor's previous position there as a full-time tenure track Assistant Professor.

27. On March 23, 2020, Dr. Tudor received an email from Sheila Gold in Southeastern's Human Resources office.  The email confirmed that Dr. Tudor's application was complete and had been forwarded to the search committee for the Instructor position.

28. Over two weeks after receiving this confirmation, on April 8, 2020, Dr. Tudor learned from a member of the search committee that the search committee had not received Dr. Tudor's application.

29. Dr. Tudor immediately emailed Sheila Gold to inquire about the status of Dr. Tudor's application. Sheila Gold responded the following day, stating, "I will check on the status and get back to you."

30. On April 13, 2020, Dr. Tudor had not heard from Sheila Gold and sent another email inquiring about the status of her application.

31. On April 20, 2020, Dr. Tudor had still not heard from Sheila Gold, and sent an email to the director of Southeastern's Human Resources office inquiring about the status of her application.

32. Dr. Tudor also sent an email to Southeastern's compliance officer, Mike Davis, informing him of the situation and inquiring about the status of her application.

33. Counsel for Southeastern and RUSO, Dixie Coffey, Jeb Joseph and Zach West, of the Office of the Oklahoma Attorney General, stated in writing on April 17, 2020 that, because of her Title VII litigation against Southeastern, they had determined Dr. Tudor will not be considered for any employment opportunities at Southeastern. The letter is attached hereto as Exhibit B.

34. Counsel for Southeastern and RUSO stated that Dr. Tudor's attempt to obtain employment was inappropriate because of her Title VII litigation, and because they felt that this rendered the relationship between Dr. Tudor and the school "irreconcilable."

35. Dr. Tudor has good relations with many members of the Southeastern community, including many faculty. In fact, three emeriti faculty members wrote recommendations supporting her application for the Instructor position.

36. There are no present faculty within Southeastern's English department with whom Dr. Tudor has negative relations.

37. Since all members of the administration who were involved in the discrimination and retaliation against her have left Southeastern, Dr. Tudor has no negative relations with any current members of the administration.

38. Dr. Tudor's relationship with Southeastern's faculty and administration is not currently irreconcilable or hostile, Southeastern put into effect comprehensive policies on May 10, 2017 prohibiting harassment or discrimination based on gender identity and additional policies on May 8, 2018 explicitly detailing its requirements for transgender inclusion, no one now at Southeastern or RUSO has currently expressed any animosity or hostile attitude towards Dr. Tudor, and there is no reason to believe that Southeastern would not take appropriate measures to ensure a productive, amicable, and non-discriminatory working relationship.

## CAUSE OF ACTION

### COUNT 1
### 42 U.S.C. § 2000e, et seq.
### Retaliation

39. Dr. Tudor re-alleges each and every allegation contained in all previous paragraphs as if fully set forth herein.

40. Defendant Southeastern was on specific notice that she sought employment.

41. She applied and was qualified for the job for which Southeastern was seeking applicants.

42. Despite being qualified, she was rejected.

43. After her rejection, the position remained open and Southeastern continued to seek applicants from persons of Dr. Tudor's qualifications.

44. The intent and effect of Defendant Southeastern's acts complained of above were to deprive Dr. Tudor of equal employment opportunities as a prospective employee because of her opposition to Title VII discrimination, and/or because she has participated in a Title VII proceeding.

45. By opposing the Title VII discriminatory practices of Southeastern, and bringing the Prior Action before this Court for the purpose of enforcing Title VII, Dr. Tudor engaged in activities protected by Title VII.

46. The adverse actions taken against Dr. Tudor, including the ban on Dr. Tudor's hiring at Southeastern and RUSO, and the failure to hire her for the position, would dissuade a reasonable employee from making or supporting a complaint of discrimination.

47. The action by the Oklahoma Attorney General rejecting Dr. Tudor's application and banning her from applying to jobs at Southeastern based on her Title VII litigation constitutes impermissible retaliation that violates Title VII.

48. As a direct and proximate result of Defendants' unlawful retaliation, Dr. Tudor has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

## PRAYER FOR RELIEF

49. WHEREFORE, Plaintiff Dr. Rachel Tudor respectfully requests that this Court:

A. Declare that the acts, practices and omissions complained of herein are unlawful and violate Title VII;

B. Direct Defendants to pay Dr. Tudor for past and future pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs;

C. Direct Defendants to pay Dr. Tudor for past and future non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including humiliation, loss of enjoyment of life, damage to her professional reputation, and other non-pecuniary losses in an amount to be determined at trial;

D. Award Dr. Tudor attorneys' fees, costs and disbursements as provided by law;

E. Award such additional relief as justice may require; and

F. Plaintiff demands a trial by jury on all claims.


Dated: October 19, 2020

Respectfully submitted,

/s/ Jerry Colclazier
Jerry L. Colclazier, OBA #13814
COLCLAZIER & ASSOCIATES
404 North Main Street
Seminole, OK 74868
Telephone: (405) 382-1212
Facsimile: (405) 382-1214
jerry@colclazier.com

/s/ Jillian T. Weiss
Jillian T. Weiss (JW4542 - pending *pro hac vice* admission)
LAW OFFICE OF JILLIAN T.WEISS, PC
442 15th Street No. 1R
Brooklyn, New York 11215
Telephone: (845) 709-3237
Facsimile: (845) 684-0160
jweiss@jtweisslaw.com

*Attorneys for Plaintiff*
*Dr. Rachel Tudor*